IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BRAYLINE BAKER                                                    PLAINTIFF

v.                        Civil No. 5:21-cv-05013

OFFICER CHARLES BROCKMEYER,
Bella Vista Police Department ("BVPD");
DETECTIVE JOSHUA DUGGAN, BVPD;
SERGEANT LUCAS HENSON, BVPD;
DETECTIVE ED WILLIAMS, BVPD;
LIEUTENANT SCOTT VANATTA, BVPD;
OFFICER YANCY MCCOOL, BVPD;
OFFICER TERRY DICKEY, BVPD;
OFFICER K-9 CABO, Benton County Sheriff's
Office ("BCSO"); OFFICER C. SKAGGS, BCSO; and
SHERIFF SHAWN HOLLOWAY, BCSO                                      DEFENDANTS

## OPINION AND ORDER

Plaintiff, Brayline Baker ("Baker"), currently an inmate of the Benton County Detention

Center ("BCDC"), filed this *pro se* civil rights action under 42 U.S.C. § 1983. Baker proceeds

*pro se* and *in forma pauperis* ("IFP"). The case is before the Court for preservice screening of

the Complaint (ECF No. 1) under 28 U.S.C. § 1915A. Pursuant to § 1915A, the Court has the

obligation to screen any complaint in which a prisoner seeks redress from a governmental entity

or officer or employee of a governmental entity.

## I.      BACKGROUND

According to the allegations of the Complaint (ECF No. 1), on August 11, 2020, Baker

was on a passenger bus traveling to his home in Kansas City, Missouri. *Id.* at 7 & 9. Baker sat

at the back of the bus. *Id.* at 9-10. He had been sleeping, when at approximately 1:00 p.m., he

was woken up by a passenger jostling his foot as he was entering the restroom. *Id.* at 9.

Approximately two minutes later, Baker entered the restroom. *Id.* at 10. He thought that it "had kinda smelled like smoke" but admits he did not pay much attention. *Id.*

When the bus was near Bella Vista, Arkansas, the bus driver pulled the bus off the side of the road and accused Baker of having smoked in the bathroom. (ECF No. 1 at 10). Baker denied it and stated he did not smoke at all. *Id.* The bus driver continued to accuse Baker of smoking and advised him that it was a federal offense. *Id.* The bus driver returned to the front of the bus and stepped off the bus. *Id.* at 11. Baker "grabbed two of the four bags" that were in front of him, stepped off the bus, and asked the driver what was going on. *Id.* Baker alleges the driver ignored him. *Id.* Baker told the bus driver that if he wanted Baker off the bus that was all he had to say. *Id.*

The bus driver called the police "in case [Baker] became belligerent." (ECF No. 1 at 12). Members of the Bella Vista Police Department responded to the scene and interviewed the bus driver. *Id.* The first officer on the scene was Officer Terry Dickey. *Id.* The bus driver reported that a Black male, later identified as Baker, had been smoking on the bus and the driver pulled over to confront him. *Id.* at 11-12. The bus driver reported that he had advised Baker that he was removing him from the bus at the next stop in Joplin, Missouri. *Id.* at 11. The bus driver reported that Baker did not want the police involved and ran west and onto a golf course. *Id.* The bus driver indicated there had been no disturbance and he did not want to press any charges. *Id.* at 13. Other occupants of the bus denied having smelled any smoke. *Id.* at 13. Officer Dickey indicated that Lieutenant Vanatta and other officers were in the area searching for the subject and he relayed the message to them. *Id.*

Before the police arrived, Baker took his bags, crossed two lanes of traffic, the median, and the other two lanes of traffic. (ECF No. 1 at 11). Passing through high grass and a tree line,

Baker approached an individual operating a backhoe on a golf course. *Id.* Baker explained he was stranded and asked for directions to the nearest gas station. *Id.* In the meantime, dispatch reported that the male subject ran west onto a golf course when the bus driver indicated he was calling the police. *Id.* at 11.

After receiving the directions, Baker alleges he saw a man "running towards [him] with a gun in his hand who didn't say that he was an officer or anything. Wasn't wearing [a] uniform [and had no] badge showing like cops would do." (ECF No. 1 at 16). Baker alleges he thought the man might have been a "road raged driver" angry that Baker crossed the road in front of his car. *Id.* Baker alleges that out of fear for his life he took off running. *Id.* Baker alleges he ran for about an hour when he exited the woods and saw Michael Clifford working in his garage at 12 Abingdon Lane, Bella Vista. *Id.* Baker informed Clifford that he was stranded and asked to use his phone and for a ride to the nearest gas station. *Id.* at 15. Clifford replied that Baker could use his phone but that he could not give Baker a ride. *Id.*

As Baker began to dial the phone, he noticed a dark colored Dodge Durango go by driving recklessly with a "White guy hanging out of the passenger side window." (ECF No. 1 at 15). The Durango turned around and a man with a firearm in his hand began approaching. *Id.* Baker, who had been seated about two feet inside the garage, stood up holding his backpack in his left hand and a phone in his right hand. *Id.* Baker turned around. *Id.* At this point he was tased in the back of his left arm and choked. *Id.* at 18. Baker identifies this individual as Detective Duggan. *Id.* Officer Brockmeyer and Sergeant Henson also had their hands-on Baker, and he was thrown to the ground. *Id.* Baker alleges that Sergeant Henson began tasing him multiple times in his left arm, upper back, left shoulder, bicep, left elbow, and his wrist. *Id.* Baker maintains that Detective Duggan lay on top of him crushing him with his weight. *Id.* at 19.

Baker alleges that he was suffocating. *Id.* Additionally, Baker asserts that Officer Brockmeyer, who had control of Baker's right arm, began bending Baker's fingers back dislocating two of them. *Id.* Baker alleges he cried out pleading with the officers while saying he could not breathe and was in so much pain. *Id.* Baker asserts that despite his pleas, Officer Brockmeyer and Detective Duggan began "to hit [him] in the face while [he] was being held and tased by [Sergeant Henson] in hand-cuffs that [were] applied by Detective Ed Williams." *Id.* Baker alleges his limp body was lifted off the floor of the garage and dragged to the curb of the residence where he was dropped face first *Id.* at 19-20. Baker maintains that "assisting officers" then raided his pockets and personal property. *Id.* at 20. Detective Williams then walked close to Baker's face and, believing Baker was trying to spit on him, kicked Baker in the head. *Id.*

Emergency Medical Services ("EMS") were dispatched to the scene and Baker was taken to the hospital. (ECF No. 1 at 20). Baker alleges he was unconscious for a period of time but came to when he was being wheeled on a stretcher by the EMS technicians into the hospital. *Id.* Baker began choking on fragments of broken teeth that were in his throat. *Id.* at 21. The emergency room nurse and doctor cleared his throat. *Id.* Baker alleges he heard the medical staff ask the officers what happened to him. *Id.* The officers replied they "had just drive tased him." *Id.* At this point, Baker began to cry out repeatedly that he had been beaten and asked for help. *Id.* at 21 & 23. Before he knew what was happening, Baker felt a sharp pain in his right arm and looked down and saw he had been "injected with some kind of drug." *Id.* at 23. Baker then went "under in a 'sleeping uncon[sc]ious' state." *Id.*

Baker alleges that while he was unconscious, he was transported by Officer Brockmeyer to the BCDC, stripped out of his clothes, and placed in a jump-suit. (ECF No. 1 at 23-24. His intake into the BCDC was handled by Officer Skaggs. *Id.* at 24. In Baker's opinion, Officer

Skaggs "went against the 'Law'" by accepting him in an unconscious state. *Id.* When Baker woke up, he realized he was no longer in the hospital or in his own clothing. *Id.* at 25. Baker alleges he woke up "in so much pain that [he] could barely think." *Id.* He banged on the door asking what was going on and where he was. *Id.* Someone, he believes it was Officer Skaggs, replied that he was in the BCDC. *Id.* A short time later, Baker's mug shot was taken. *Id.* Baker alleges that you could tell from the mug shot that he had been "brutally beaten." *Id.* He indicates his face was swollen and bruised; he also had black eyes. *Id.* Bakes alleges his injuries consisted of cuts and lacerations on his legs, black eyes, fractured fingers, burns from being tased, bruising on his chest, arms, back, face, and legs, broken teeth, mouth infections, and a busted lip. *Id.* at 26. Baker also alleges he suffers mental anguish, including suffering "horrible nightmares."

Baker alleges that when the bus driver stated that there had been no disturbance and he did not want to press any charges, there was no probable cause to arrest Baker. (ECF No. 1 at 14). Baker maintains that the officers "took the law into [their] own hands" and that the pursuit was "fueled by 'hatred' and 'systemic racism.'" *Id.* Baker points out that all the police officers involved in the pursuit, the use of excessive force, and arrest, were white. *Id.*

Baker asserts three claims for relief: (1) he was arrested without probable cause and falsely imprisoned; (2) excessive force was used against him; and (3) his rights were violated when he was transported to the BCDC while unconscious, stripped, put into a jumpsuit, and imprisoned there. As relief, Baker seeks compensatory and punitive damages. *Id.* at 26. He also requests that the Bella Vista Police Department be required to reform its "use of force policies/Training." *Id.*

## II.    APPLICABLE STANDARD

The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seek monetary relief from a defendant who is immune from such relief.    28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact."    *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).    A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).    "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'"    *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, even a *pro se* Plaintiff must allege specific facts sufficient to support a claim.    *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III.    DISCUSSION

### A.    Individual Capacity Claims against Sheriff Holloway

The only mention of Sheriff Holloway in the complaint is that Officer Skaggs is his representative.    (ECF No. 1 at 22).    A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability.    *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).    "The general responsibility . . . for supervising the operation of a [facility] is not sufficient to establish personal liability."    *Estate of Rosenberg-by-Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).    "[A] bare allegation that someone in supervisory authority has been deliberately indifferent, without any specification of that person's contact in fact with the plaintiff, [or] even an explicit charge of inadequate training or supervision of

subordinates, is [not] sufficient to state a [§ 1983] claim." *Id.; see also Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). No plausible individual capacity claim is stated against Sheriff Holloway.

## B. Official Capacity Claims

An official capacity claim is considered a claim against the employing governmental entity, here, the City of Bella Vista and Benton County. *Crawford v. Van Buren Cnty.*, 678 F.3d 666, 669 (8th Cir. 2012). "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence, Mo.,* 829 F.3d 695, 699 (8th Cir. 2016)(citations omitted).

A plausible claim regarding policy decisions requires Baker to "plead facts that plausibly show directed involvement by the [defendant] in the formation, implementation, or enforcement of that policy." *Jackson v. Nixon*, 747 F.3d 537, 545 (8th Cir. 2014). Baker does not allege that any of the policies of Bella Vista or Benton County were unconstitutional.

The next method of establishing municipal liability is through the existence of an unofficial custom.

> [A] plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Corwin*, 829 F.3d at 700 (citation and internal quotation marks omitted).

Here, Baker alleges he was subjected to systemic racism on the part of the Bella Vista

Police Department officers. (ECF No. 1 at 14). He alleges this systemic racism was exhibited by the officers continued pursuit of him after they were advised that the bus driver did not want to pursue any charges. *Id.* He points out that all of the officers involved in his pursuit and the use of excessive force were white. *Id.* He asserts that the conduct of the officers was "motivated" by racism. *Id.*

Accepting these allegations as true, Baker has failed to allege a plausible claim of the existence of liability on the part of Bella Vista based on an unofficial custom. As discussed in *Monell*, "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of [governmental] officials . . . Although not authorized by written law, such practices of [governmental] officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691 (1978) (quotation marks and citations omitted). Baker does not allege there was a continuing, widespread, persistent pattern of unconstitutional conduct on the part of the employees of Bella Vista. Rather, his factual allegations are limited to the officers' conduct on a single occasion—August 11, 2020. His use of the terms "systemic racism" and "racial profiling" are not backed up with any factual allegations that would plausibly support the existence of either. Baker has alleged no plausible claim against Bella Vista based on an unconstitutional custom. *See Ulrich v. Pope Cnty.,* 715 F.3d 1054, 1061 (8th Cir. 2013)(*Monell* claim properly dismissed where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom"). Similarly, Baker makes no allegations about the existence of an unconstitutional custom or usage on the part of Benton County.

Further, Baker does not allege the existence of any failure to train or supervise on the behalf of Bella Vista or Benton County. Instead, he makes only a vague and conclusory statement that

a failure to train or supervise existed without any factual allegations to support the claim. *See Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010)(requirements of failure to train or supervise claims). No plausible official capacity claim is stated against Bella Vista or Benton County.

## C. Claims against Lieutenant Vanatta, Officer McCool, Officer Dickey, Officer Bunch, and K-9 Cabo

With respect to Lieutenant Vanatta, Baker alleges that he assisted in the pursuit, was the person who Officer Dickey communicated with following his interviews with the bus driver and passengers, and once Baker was arrested, checked his pockets, and removed his personal property at the scene. Baker does not allege Lieutenant Vanatta used excessive force, made the decision to search for and arrest Baker, or took any other action violative of his rights. Liability under § 1983 requires personal involvement in the constitutional violations. *Ashcroft v. Iqbal*, 566 U.S. 662, 676 (2009)(a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights"). No plausible claim is stated against Lieutenant Vanetta.

With respect to Officer McCool and Officer Bunch, Baker only alleges they were assisting officers. No other factual allegations are made against them. No plausible claim has been stated.

With respect to K-9 Cabo, other then listing him as a Defendant, the Complaint contains no allegations against him. No plausible claim has been stated.

With respect to Officer Dickey, he is the officer who responded to the bus driver's call, took a report from him, interviewed the passengers, and informed dispatch that the bus driver did not want to press any charges. Clearly, none of these actions deprived Baker of his federal

constitutional rights. Baker also alleges that Officer Dickey went to the scene of the arrest and assisted until EMS arrived. There are no other factual allegations made. Baker points to no actions taken by Officer Dickey that were violative of his federal constitutional rights. No plausible claim is stated.

## IV.    CONCLUSION

For the reasons just stated, the following claims are dismissed: (1)  all individual and official claims against Sheriff Holloway; (2) all official capacity claims against the City of Bella Vista or Benton County; and (3) all claims against Lieutenant Vanatta, Officer McCool, Officer Bunch, Officer K-9 Cabo, and Officer Dickey are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A(b).

Based on the allegations of the Complaint, plausible claims have been stated against Officer Brockmeyer, Detective Duggan, Sergeant Henson, Detective Williams, and Officer Skaggs.  By separate order service will be directed on them.

IT IS SO ORDERED this 22nd day of February 2021.

/s/ P. K. Holmes, III
P. K. HOLMES, III
U.S. DISTRICT JUDGE