IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BRAYLINE BAKER                                                                                    PLAINTIFF

v.                              Civil No. 5:21-cv-05013

OFFICER CHARLES BROCKMEYER,
Bella Vista Police Department ("BVPD");
DETECTIVE JOSHUA DUGGAN, BVPD;
SERGEANT LUCAS HENSON, BVPD;
DETECTIVE ED WILLIAMS, BVPD; and
OFFICER CAMERON SKAGGS, Benton County Sheriff's
Office                                                                                          DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Brayline Baker ("Baker"), currently an inmate of the Benton County Detention Center ("BCDC"), filed this *pro se* civil rights action under 42 U.S.C. § 1983. Baker proceeds *pro se* and *in forma pauperis* ("IFP"). The case is before the Court on the Joint Motion of the Defendants to Stay the Proceedings (ECF No. 12) pursuant to *Younger v. Harris,* 401 U.S. 37 (1971) due to a pending state criminal case, *State of Arkansas v. Brayline Baker,* 04CR-20-1803, in the 19th Judicial District West, Division 2, Benton County. Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable P.K. Holmes, III, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

### I.   BACKGROUND

According to the allegations of the Complaint (ECF No. 1), on August 11, 2020, Baker was on a passenger bus traveling to his home in Kansas City, Missouri. *Id.* at 7 & 9. Baker sat at the back of the bus. *Id.* at 9-10. He had been sleeping, when at approximately 1:00 p.m., he was woken up by a passenger jostling his foot as the passenger was entering the restroom. *Id.* at

1

9. Approximately two minutes later, Baker entered the restroom. *Id.* at 10. He thought that it "had kinda smelled like smoke" but admits he did not pay much attention. *Id.*

When the bus was near Bella Vista, Arkansas, the bus driver pulled the bus off the side of the road and accused Baker of having smoked in the bathroom. (ECF No. 1 at 10). Baker denied it and stated he did not smoke at all. *Id.* The bus driver returned to the front of the bus and stepped off the bus. *Id.* at 11. Baker "grabbed two of the four bags" that were in front of him, stepped off the bus, and asked the driver what was going on. *Id.* Baker alleges the driver ignored him. *Id.*

The bus driver called the police "in case [Baker] became belligerent." (ECF No. 1 at 12). Members of the Bella Vista Police Department responded to the scene and interviewed the bus driver. *Id.* The first officer on the scene was Officer Terry Dickey. *Id.* The bus driver reported that a Black male, later identified as Baker, had been smoking on the bus and the driver pulled over to confront him. *Id.* at 11-12. The bus driver reported that he had advised Baker that he was removing him from the bus at the next stop in Joplin, Missouri. *Id.* at 11. The bus driver reported that Baker did not want the police involved and ran west and onto a golf course. *Id.* The bus driver indicated there had been no disturbance and he did not want to press any charges. *Id.* at 13. Officer Dickey indicated that Lieutenant Vanatta and other officers were in the area searching for the subject and he relayed the message to them. *Id.*

Before the police arrived, Baker took his bags, crossed two lanes of traffic, the median, and the other two lanes of traffic. (ECF No. 1 at 11). Passing through high grass and a tree line, Baker approached an individual operating a backhoe on a golf course. *Id.* Baker explained he was stranded and asked for directions to the nearest gas station. *Id.* In the meantime, dispatch reported that the male subject ran west onto a golf course when the bus driver indicated he was

calling the police.  *Id.* at 11.

After receiving the directions, Baker alleges he saw a man "running towards [him] with a gun in his hand who didn't say that he was an officer or anything.  Wasn't wearing [a] uniform [and had no] badge showing like cops would do."  (ECF No. 1 at 16).  Baker alleges he thought the man might have been a "road raged driver" angry that Baker crossed the road in front of his car.  *Id.*  Baker alleges that out of fear for his life he took off running.  *Id.*  Baker alleges he ran for about an hour when he exited the woods and saw Michael Clifford working in his garage at 12 Abingdon Lane, Bella Vista.  *Id.*  Baker informed Clifford that he was stranded and asked to use his phone and for a ride to the nearest gas station.  *Id.* at 15.  Clifford replied that Baker could use his phone but that he could not give Baker a ride.  *Id.*

As Baker began to dial the phone, he noticed a dark colored Dodge Durango go by driving recklessly with a "White guy hanging out of the passenger side window."  (ECF No. 1 at 15).  The Durango turned around and a man with a firearm in his hand began approaching.  *Id.*  Baker, who had been seated about two feet inside the garage, stood up holding his backpack in his left hand and a phone in his right hand.  *Id.*  Baker turned around.  *Id.*  At this point he was tased in the back of his left arm and choked.  *Id.* at 18.  Baker identifies this individual as Detective Duggan.  *Id.*  Officer Brockmeyer and Sergeant Henson also had their hands on Baker, and he was thrown to the ground.  *Id.*  Baker alleges that Sergeant Henson began tasing him multiple times in his left arm, upper back, left shoulder, bicep, left elbow, and his wrist.  *Id.*  Baker maintains that Detective Duggan lay on top of him crushing him with his weight.  *Id.* at 19.  Baker alleges that he was suffocating.  *Id.*  Additionally, Baker asserts that Officer Brockmeyer, who had control of Baker's right arm, began bending Baker's fingers back dislocating two of them.  *Id.*  Baker alleges he cried out pleading with the officers while saying he could not breathe and

3

was in so much pain. *Id.* Baker asserts that despite his pleas, Officer Brockmeyer and Detective Duggan began "to hit [him] in the face while [he] was being held and tased by [Sergeant Henson] in hand-cuffs that [were] applied by Detective Ed Williams." *Id.* Baker alleges his limp body was lifted off the floor of the garage and dragged to the curb of the residence where he was dropped face first *Id.* at 19-20. Baker maintains that "assisting officers" then raided his pockets and personal property. *Id.* at 20. Detective Williams then walked close to Baker's face and, believing Baker was trying to spit on him, kicked Baker in the head. *Id.*

Emergency Medical Services ("EMS") were dispatched to the scene and Baker was taken to the hospital. (ECF No. 1 at 20). Baker alleges he was unconscious for a period of time but came to when he was being wheeled on a stretcher by the EMS technicians into the hospital. *Id.* Baker began choking on fragments of broken teeth that were in his throat. *Id.* at 21. The emergency room nurse and doctor cleared his throat. *Id.* Baker alleges he heard the medical staff ask the officers what happened to him. *Id.* The officers replied they "had just drive tased him." *Id.* At this point, Baker began to cry out repeatedly that he had been beaten and asked for help. *Id.* at 21 & 23. Before he knew what was happening, Baker felt a sharp pain in his right arm and looked down and saw he had been "injected with some kind of drug." *Id.* at 23. Baker then went "under in a 'sleeping uncon[sc]ious' state." *Id.*

Baker alleges that while he was unconscious, he was transported by Officer Brockmeyer to the BCDC, stripped out of his clothes, and placed in a jump-suit. (ECF No. 1 at 23-24). His intake into the BCDC was handled by Officer Skaggs. *Id.* at 24. In Baker's opinion, Officer Skaggs "went against the 'Law'" by accepting him in an unconscious state. *Id.* When Baker woke up, he realized he was no longer in the hospital or in his own clothing. *Id.* at 25. Baker alleges he woke up "in so much pain that [he] could barely think." *Id.* He banged on the door

asking what was going on and where he was.  *Id.*  Someone, he believes it was Officer Skaggs, replied that he was in the BCDC.  *Id.*  A short time later, Baker's mug shot was taken.  *Id.* Baker alleges that you could tell from the mug shot that he had been "brutally beaten."  *Id.*  He indicates his face was swollen and bruised; he also had black eyes.  *Id.*  Bakes alleges his injuries consisted of cuts and lacerations on his legs, black eyes, fractured fingers, burns from being tased, bruising on his chest, arms, back, face, and legs, broken teeth, mouth infections, and a busted lip. *Id.* at 26.   Baker also alleges he suffers mental anguish, including suffering "horrible nightmares."

Baker alleges that when the bus driver stated that there had been no disturbance and he did not want to press any charges, there was no probable cause to arrest Baker.  (ECF No. 1 at 14). Baker maintains that the officers "took the law into [their] own hands" and that the pursuit was "fueled by 'hatred' and 'systemic racism.'"  *Id.*  Baker points out that all the police officers involved in the pursuit, the use of excessive force, and arrest, were white.  *Id.*

Baker asserts three main claims for relief:   (1) he was arrested without probable cause and falsely imprisoned; (2) excessive force was used against him; and (3) he was pursued and arrested because of his race.  Baker additionally appears to be asserting that his constitutional rights were violated when he was transported to the BCDC while unconscious, stripped, and put into a jumpsuit.  As relief, Baker seeks compensatory and punitive damages.  *Id.* at 26.  He also requests that the Bella Vista Police Department be required to reform its "use of force policies/Training."  *Id.*

In the criminal case, Baker was charged by criminal information with one count of possession of firearms (a Highpoint 40 Smith and Wesson) by certain persons, one count of possession of a controlled substance (Ecstasy), one count of possession of drug paraphernalia (a

scale), one count of resisting arrest, and one count of fleeing on foot.[1] These charges arose out of the events of August 11, 2020. A pretrial hearing is scheduled for May 26, 2021. It appears that no jury trial has been scheduled as of this date.

## II.  DISCUSSION

It is a settled principle of comity that state courts should be allowed to exercise their functions without interference from the federal courts particularly where a state criminal trial is pending. *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). In *Younger*, the Court held that absent extraordinary circumstances, federal courts should not interfere with state criminal prosecutions. *Younger*, 401 U.S. at 54. The *Younger* abstention doctrine applies "if the proceeding: (1) involves an ongoing state judicial proceeding, (2) implicates an important state interest, and (3) provides an adequate opportunity to raise constitutional challenges in the state proceeding." *Hudson v. Campbell*, 663 F.3d 985, 987 (8th Cir. 2011)(citation omitted).

If the three elements of *Younger* are met, "unless we are to trivialize the principles of *Younger v. Harris*, the federal complaint should [be] dismissed . . . absent satisfactory proof of those extraordinary circumstances calling into play one of the limited exceptions to the rule of *Younger v. Harris* and related cases." *Hicks*, 422 U.S. at 350. The exceptions are: (1) when the state-court proceeding was brought in bad faith or to harass the federal plaintiff; (2) where a plaintiff seeks to challenge a state statute that is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it" or (3) where other "extraordinary

---

[1] Information about the pending state charges was obtained at https://caseinfo.arcourts.gov (accessed Apr. 21, 2021).

circumstances" threaten "irreparable loss [that] is both great and immediate." *Younger,* 401 U.S. at 45, 53-54.

Defendants broadly argue that *Younger* bars all of Baker's "claims emanating from his arrest on August 11, 2020." (ECF No. 13 at 1). Defendants maintain Baker's civil claims directly challenge the validity of his arrest and the amount of force used. *Id.* at 2. They point out that Baker has charges of resisting arrest and fleeing both of which are important to a determination of the reasonableness of the amount of force used in executing the arrest. Relying on *Wallace v. Kato,* 549 U.S. 384, 393-94 (2007), Defendants maintain that Baker's "civil claims are related to rulings that will likely be made in the pending criminal trial." *Id.* at 3.

The Court turns to an examination of the claims being asserted in this federal civil rights action to determine if *Younger* applies.

### A.  Fourth Amendment--Lack of Probable Cause Claim

In this case, the three *Younger* criteria are satisfied with respect to Baker's Fourth Amendment lack of probable cause claim. Baker's state criminal case was pending when he filed this case and is still pending. There are important state law interests in enforcing the state's criminal laws and in allowing state courts to administer their own cases. *Juidice v. Vail*, 430 U.S. 327, 335 (1977)(recognizing important state "interest in the enforcement of its criminal laws"). Baker has not identified any barrier to his ability to raise constitutional challenges as to the legality of his arrest and detention in his state court case. The Court "may not engage any presumption 'that the state courts will not safeguard federal constitutional rights.'" *Neal v. Wilson,* 112 F.3d 351, 357 (8th Cir. 1997)(*quoting Middlesex Cnty. Ethic Comm'n v. Garden State Bar Ass'n,* 457 U.S. 423, 435 (1982)).

However, Baker contends that bad faith and harassment on the part of Defendants relieve the court of the strictures of *Younger*. *Hicks,* 401 U.S. at 340. Specifically, Baker contends the Defendants acted in "bad faith" in pursuing the criminal case. *See Middlesex,* 457 U.S. at 435 (Bad faith, harassment, or some other extraordinary circumstance may make abstention inappropriate.)(ECF No. 18 at 1-2). Baker maintains there was no crime when the officers were told by the bus driver that he did not want to press charges. (ECF No. 17 at 2). Nevertheless, Baker maintains he was pursued, arrested, and falsely imprisoned. *Id.* According to Baker, "[d]ue to the very fact that a criminal case is being pursued in itself, stems from violations to all of the Plaintiff's constitutional rights here by therefore, 'civil' and 'criminal' proceedings should be held independently from one another." *Id.*

"For purposes of *Younger,* 'bad faith' means a showing that the statute was enforced with no expectation of convictions, but only to discourage a plaintiff's exercise of protected rights. In other words, bad faith is not determined by the likelihood of success on the merits, but by a showing of maliciousness on the part of the prosecutor." *Phelps-Roper v. Heineman*, 710 F. Supp. 2d 890, 903 (D. Neb. 2010)(*citing Kugler v. Helfant,* 421 U.S. 117, 124 (1975)); *Cameron v. Johnson,* 390 U.S. 611, 621 (1968)). "*Younger's* bad faith exception is extraordinarily rare, and applies only in truly exceptional circumstances, such as where the state court is clearly incompetent to adjudicate the issues by reason of bias." *P.G. v. Ramsey County,* 141 F. Supp. 2d 1220, 1229 (D. Minn. 2001)(*citing Gibson v. Berryhill,* 411 U.S. 564, 577 (1973)).

Baker has not and cannot demonstrate bad faith. *Perez v. Ledesma,* 401 U.S. 82, 85 (1971)("The propriety of arrests and the admissibility of evidence in state criminal prosecutions are ordinarily matters to be resolved by state tribunals"). Further, if Baker is convicted, the conviction is "a complete defense to a § 1983 action asserting that the arrest was made without

8

probable cause." *Malady v. Crunk*, 902 F.2d 10, 11 (8th Cir. 1990). The bad faith exception to *Younger* abstention does not apply. This claim will be stayed.

### B.  Fourth Amendment—Excessive Force Claim

A citizen's claim that excessive force was used against him during arrest is properly analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Conner*, 490 U.S. 386, 388 (1989). The test for whether for the use of force is reasonable or excessive is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. One of the factors to be considered is "whether [the suspect] is actively resisting arrest or attempting to evade arrest." *Id.* at 396. "Because the question of whether [Baker] is guilty of resisting arrest [and/or fleeing arrest] is intertwined with the question of whether [Defendants] used excessive force, *Younger* abstention is appropriate." *Boothe v. Sherman*, 66 F. Supp. 3d 1069, 1074 (N.D. Ill. 2014).

### C.  Fourteenth Amendment—Equal Protection Claim

Baker's Equal Protection claim meets the criteria for the application of *Younger* abstention. To allow Baker to proceed on his racial discrimination claim in federal court would directly interfere with the pending state criminal case. *Cano-Diaz v. City of Leeds, Ala.,* 882 F. Supp. 2d 1280, 1289 (N.D. Ala. 2012)(*Younger* abstention applies to Fourteenth Amendment racial profiling claims); *see also Grady v. B.S.,* Civil No. 3:20-cv-00095, 2021 WL 706420, *3 (W.D. N.C. Feb. 23, 2021)(false imprisonment, conspiracy, obstruction of justice, racial profiling, and defamation claims dismissed without prejudice based on *Younger* abstention). Baker can raise as a defense to his criminal charges that he was "harassed, arrested, and detained as a result of

9

discrimination, rather than criminal activity." *Ford v. Sessoms,* Civil No. 1:14-cv-320-PPS-SCL, 2015 WL 2369405, *2 (N.D. Ind. May 18, 2015). *Younger* abstention applies to this claim.

### D. Fourth Amendment—Invasion of Privacy Claim

Baker maintains his rights were violated when he was transported from the hospital to the BCDC and changed out of his clothing and put in a jumpsuit while he was unconscious. He maintains he woke up in different clothing and did not know where he was or how he got there.

The Fourth Amendment protects against unreasonable searches and seizures by government officials. This includes a right to privacy. *Bell v. Wolfish,* 441 U.S. 520, 558-59 (1979). In *Bell*, the Supreme Court held that pretrial detainees could be subject to the "restrictions and conditions of the detention facility so long as those restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536. It noted that "[l]oss of freedom of choice and privacy are inherent incidents of confinement." *Id.* at 537.

In this case, Baker was an arrestee who was taken to a hospital from the scene of the arrest. After having received a shot, Baker alleges he became unconscious at which time any threat to the safety of medical personnel, or the officers would have abated. While unconscious, he was discharged from the hospital and transported to the detention center by Officer Brockmeyer. Baker alleges his intake at the BCDC was handled by Officer Skaggs. Baker maintains that Officer Skaggs placed him in a cell, removed his clothing, and placed him in a jumpsuit.

This claim is not intertwined with the pending criminal case. *Younger* abstention therefore does not apply.

### III. CONCLUSION

For these reasons, it is recommended that the Joint Motion to Stay (ECF No. 12) be **GRANTED IN PART AND DENIED IN PART.** Specifically, it is recommended that the

10

Fourth Amendment unlawful arrest and excessive force claims and the Fourteenth Amendment equal protection claim **be STAYED and ADMINISTRATIVELY TERMINATED.** *See Quachkenbush v. Allstate Ins. Co.,* 517 U.S. 706, 719 (1996)(stay rather than dismissal warranted when money damages are sought).  It is further recommended that Baker be advised he may file a motion to reopen this case upon conclusion of the state court criminal proceedings.

It is further recommended that the Joint Motion to Stay (ECF No. 12) be **DENIED** with respect to the Fourth Amendment invasion of privacy claim.  This claim is asserted only against Officer Brockmeyer and Officer Skaggs.  This claim should be allowed to proceed.  However, to avoid undue confusion, I recommend the invasion of privacy claim be severed and a new case opened asserting only this single claim against Officer Brockmeyer and Officer Skaggs.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 27th day of April 2021.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE